IN RE APPEAL NO. 544, SEPTEMBER TERM, 1974 FROM
THE CIRCUIT COURT FOR CECIL COUNTY,
SITTING AS A JUVENILE COURT

[No. 544, September Term, 1974.]

*Decided February 24, 1975.*

The cause was argued before ORTH, C. J., and DAVIDSON and MELVIN, JJ.

*Stefan Rogers Skipp, Assigned Public Defender,* for appellant.

*Leroy Handwerger, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Donald C. Cole, Jr., State's Attorney for Cecil County* and *Frank Thomas Howard, Assistant State's Attorney for Cecil County,* on the brief, for appellee.

28

Orth, C. J., delivered the opinion of the Court.

## STATEMENT OF THE CASE

On 27 June 1974 in the Circuit Court for Cecil County, sitting as a Juvenile Court, a male child 15 years of age (appellant), whose identity Maryland Rule 1097 forbids us to reveal, was found to be delinquent. He was committed to the Maryland Training School for Boys for an indefinite period. He appealed. Courts Art. § 12-301.

## ISSUE FOR DECISION

Despite the limited nature of the question presented by appellant,[1] we think that what is called for on this appeal is a review of the requirements with respect to the conduct of an adjudicatory hearing in a juvenile cause. The real issue for decision is whether those requirements were observed, and if not, whether the failure to do so was so prejudicial to appellant as to require reversal of the judgment.

## THE LAW

A child, Courts Art. § 3-801 (e), is brought before a juvenile court by the filing of a petition. Rule 902. See Courts Art. §§ 3-810 to 3-813, inclusive. The petition shall include the statutory classification of the act or condition causing the child to come under the jurisdiction of the court and a statement in simple nontechnical language of such facts on which the action is based as are sufficient to establish the court's jurisdiction. Rule 903, § b 3 and 4. A

---

1. Appellant presents the question: "Did the trial court commit reversible error by accepting a Juvenile's guilty plea without administering the standard applicable to waiver of Constitutional rights?" He argues that the trial court committed reversible error. The State urges that "the manner in which the trial judge accepted the juvenile's guilty plea [measured] up to the essentials of due process and fair treatment."

Although, under Rule 1085, we do not ordinarily decide any question which does not plainly appear by the record to have been tried and decided by the lower court, we may decide such question where it is necessary or desirable for the guidance of the lower court or to avoid the expense and delay of another appeal.

party [2] may file a pleading denying or admitting all or a part of the facts alleged or a motion raising preliminary objection. If no pleading is filed, the parties are deemed to have denied the allegations. Rule 904. After a petition has been filed and unless jurisdiction has been waived, the court shall hold an adjudicatory hearing. Courts Art. § 3-829 (a). " 'Adjudicatory hearing' means a hearing to determine the truth of the allegations in the petition." Courts Art. § 3-801 (b). See Rule 908. The adjudicatory hearing is not a criminal proceeding. *Jackson v. State*, 17 Md. App. 167; *Matter of Davis*, 17 Md. App. 98; *Matter of Wooten*, 13 Md. App. 521.[3] But when the allegation is that a child is delinquent,[4] the adjudicatory hearing attains many of the incidents of a criminal proceeding, although it shall be conducted by the court without a jury. Rule 903 a.[5] The State's attorney shall prepare and present the testimony in behalf of the petitioner unless excused by the court. Rule 912 b. "The rules of evidence applicable to criminal cases shall apply to delinquency hearings." Rule 912 c. The allegation in the petition must be proved beyond a reasonable doubt. Courts Art. § 3-830 (a). "A child may remain silent as of right during an adjudicatory hearing on an allegation of

---

2. " 'Party' means the child against whom a complaint has been made, and his parent, guardian or custodian." Rule 901 § a 2.

3. We said in *Matter of Davis, supra*, that a child under the jurisdiction of a juvenile court is conclusively presumed *doli incapax.* 17 Md. App. at 101-102. "No adjudication of the status of a child under this subtitle [8, *Juvenile Causes*] is a criminal conviction for any purpose nor does it impose any of the civil disabilities ordinarily imposed by a criminal conviction." Courts Art. § 3-833. "The proceedings in the juvenile court regarding a child are not admissible as evidence against him in criminal proceedings, prior to conviction, unless the charge is perjury." Courts Art. § 3-834.

4. " 'Child' means a person under the age of 18 years who is subject to the jurisdiction of the court, and includes a minor." Courts Art. § 3-801 (e). " 'Delinquent child' means a child who commits a delinquent act and who requires supervision, treatment, or rehabilitation." Courts Art. § 3-801 (k). " 'Delinquent Act' means an act which is in violation of the State Vehicle Law, any other traffic violation, or an act which would be a crime if done by a person who is not a child." Courts Art. § 3-801 (j).

5. A person 18 years of age or over proceeded against by petition for causing a child to be adjudicated delinquent, neglected or in need of supervision, Courts Art. § 3-840, may elect to be tried either before the court exercising juvenile jurisdiction or the criminal court. "Trial in the court exercising juvenile jurisdiction shall be had according to the usual criminal procedure except for trial by jury and shall be prosecuted by the State's attorney." Rule 910.

delinquency and shall be so advised." Rule 917. In an adjudicatory delinquency hearing, unlike other juvenile hearings, the presence of the child may not be excluded by the court, even temporarily. Rule 908 b. "A party is entitled to representation by legal counsel at every stage of any proceeding under [the juvenile causes] subtitle." Courts Art. § 3-830 (d). Rule 918 b, implementing this statute with respect to a child, provides: "Unless knowingly and intelligently waived, an indigent child shall be entitled to have counsel appointed by the court to represent him in a waiver, adjudicatory or disposition hearing . . . if his parents are also indigent or unwilling to employ counsel." See Code, Art. 27A, title "Public Defender", §§ 1 and 4. And we point out that in one aspect the burden on the petitioner in a delinquency adjudicatory hearing is even greater than the burden on the State in a criminal prosecution. "An uncorroborated confession made by a child out of court is not sufficient proof of delinquency." Courts Art. § 3-830 (a).[6] We summed up the law contemplated as to an adjudicatory hearing to determine delinquency in *Matter of Brown*, 13 Md. App. 625, 632:

> "We think it within the clear contemplation of the Maryland law that the 'adjudicatory hearing' is that phase of the total proceeding whereto witnesses are summonsed; whereat they are sworn, confronted with the alleged delinquent, examined and cross-examined; whereat their demeanor is observed, their credibility assessed and their testimony weighed; whereat the testimony is subject to the rules of evidence and is transcribed by a court reporter; whereat the alleged delinquent

---

6. In a criminal proceeding the rule is that an extra-judicial confession will not warrant a conviction unless there is independent evidence to establish the *corpus delicti. Stackhouse v. State,* 1 Md. App. 399, 402 and cases therein cited. "However, it is not necessary that the evidence independent of the confession be full and complete or that it establish the truth of the *corpus delicti* either beyond a reasonable doubt or by a preponderance of proof . . . ." *Cooper v. State,* 220 Md. 183, 190. If there is such evidence with respect to the *corpus delicti,* a confession requires no corroboration. See *Whitmer v. State,* 1 Md. App. 127, 130.

is represented by counsel and where he enjoys the right to remain silent under Maryland Rule 917; whereat the State's Attorney marshals and presents the evidence for the petitioner; and whereat the presiding judge or master makes and announces his finding including 'a brief statement of the grounds upon which . . . [he] bases . . . [his] determination.' "

In *McKeiver v. Pennsylvania,* 403 U. S. 528, 533, the Supreme Court of the United States said:

"Some of the constitutional requirements attendant upon the state criminal trial have equal application to that part of the state juvenile proceeding that is adjudicative in nature. Among these are the rights to appropriate notice, to counsel, to confrontation and to cross-examination, and the privilege against self-incrimination. Included, also, is the standard of proof beyond a reasonable doubt."

## THE FACTS

### The Pleadings

On 19 June 1974 two petitions were filed in the Circuit Court for Cecil County sitting as a Juvenile Court showing that appellant was a delinquent child. Petition No. 3370 gave as reason that "on or about September 12, and September 14, 1973" appellant broke into a certain dwelling house with intent to steal personal property and that he "unlawfully did, or did attempt to, steal, take and carry away" designated personal goods of the value of less than $100. Petition No. 3371 gave as reason that "on April 30 and May 3, 1974" appellant broke into the same dwelling house with the same intent and "unlawfully did, or did attempt to, steal, take and carry away" certain designated personal goods of the value of less than $100.[7] The petitioner was Robert G.

---

7. It is the felony of burglary to break and enter any dwelling house in

Ellis, whose "relationship or concern" was given as "Investigating Officer" of the Maryland State Police. The petitions were authorized by R. Darrell King, whose title was given as "Juvenile Probation Officer," Department of Social Services.

On 24 June 1974 identical answers were filed to the petitions. Each "Answer" consists of a printed form, designated as "Form 38", on which it is stated "To be prepared by: Agency authorizing filing of petition." Apparently, therefore, each was prepared by the Department of Juvenile Services. It is addressed to the Judges of the Juvenile Court, and the first part reads:

> "In answer to the petition filed in the above entitled case, we, the undersigned, hereby state that the following facts are true:
>
> 1. We have received a copy of the petition, have read the petition, have had the allegations explained to us and are satisfied that we understand the statements contained in the petition.
>
> 2. We have been advised that should the Court make a finding of delinquency ["child in need of supervision" crossed out] the Court could take jurisdiction and make such disposition as the Court feels is most suitable.
>
> 3. We have been advised that we have a constitutional right to be represented by an attorney in the case.
>
> 4. We have been advised that we have the right

---

the nighttime with intent to steal, take, or carry away the personal goods of another of any value, Code, Art. 27, § 30 (a), and it is a felony to break a dwelling house in the daytime with intent to commit murder or a felony or to steal, take or carry away the personal goods of another of any value, Code, Art. 27, § 30 (b). As of 1 July 1973, it is a misdemeanor to break and enter the dwelling house of another. Code, Art. 27, § 31A. It is a misdemeanor to steal, take or carry away personal goods of another under the value of $100. Code, Art. 27, § 341 (a). See *Boswell and Poe v. State*, 5 Md. App. 571; *Reagan v. State*, 4 Md. App. 590. An attempt to commit an offense constitutes a common law misdemeanor. *Fisher v. State*, 1 Md. App. 505.

to be represented by a Public Defender if we are unable to afford an attorney.

5. We have been advised that we have a right to a full hearing on the petition, and that in the event of a finding of delinquency ["child in need of supervision" crossed out] we have a right of appeal to the Court of Special Appeals of Maryland.

6. In filing this Answer we have not been offered any promise of favor or reward, and we have not been threatened or made afraid by any person representing or employed by any government agency."

This statement follows:

"WHEREFORE, being satisfied that we have received fair notice of the allegations in the petition and that we understand the allegations and our rights as set forth above, we, the undersigned, voluntarily and of our own free will:

1. (x) waive the right to be represented by an attorney.

2. (x) waive the right to a hearing on the allegations in the petition; admit that the statements in the petition are true and correct; and, consent to have the Court make a finding of delinquency ['child in need of supervision' crossed out] and make an appropriate disposition in this case."

The "x" indicating that 1 and 2 applies is typed in. Each Answer is signed by appellant and his mother and witnessed by King over the title, "Juvenile Counselor."

*The Adjudicatory Hearing*

The petitions came on for hearing on 27 June 1974 in the Circuit Court for Cecil County sitting as a Juvenile Court. An assistant State's attorney appeared in behalf of the petitioner. Appellant was not represented. The judge was

informed that the petitions had been answered, identified appellant and his parents, and said he was "going through this because I see you are here without a lawyer and I want to protect your Constitutional rights." He explained the allegations thus:

"[Appellant] is charged with breaking into the dwelling house of Michael Fabiucci of Charlestown on the 12th and 14th of September last year and stealing alcoholic beverages plus some other things valued at less than $100.00. He's also charged with — that first was Juvenile 3370.

The second is Juvenile 3371, which he's charged doing just about the same thing, breaking into the dwelling house of the same person and the same things. This occurred on the 30th of April and again on the 3rd of May, 1974."

He made inquiry about the Answers:

"Do you recall signing that?

[Mother]: (Nods in assent.)

THE COURT: You know in that case that [appellant] admits doing both these things? You understand that, . . . . ?

[Appellant]: (Nods in assent.)

THE COURT: And also you are willing to proceed here this morning without a lawyer. You have a Constitutional right to a lawyer if you want one. Is that understood?

[Appellant]: (Nods in assent.)"

Thereupon, the judge entered "a finding of delinquency", and stated: "[W]e will have a few facts from the Department of Juvenile Services and we will find a delinquency in law, after which we will go ahead and decide what ought to be done." King testified. Examined by the Assistant State's Attorney he said that he had done "intake counseling work" with appellant in connection with the petitions and was familiar with the "factual background" of them. He said he

was prepared, based on his counseling, to tell whether appellant was in need of care, treatment and rehabilitation. The judge interjected: "In order to be legal about it, let's split your presentation to telling us why he needs care and I'll make the adjudication . . . ." King gave three reasons why appellant was in need of guidance, treatment and rehabilitation. He had been found to be delinquent in November of 1973 and placed on probation which was still open. The offense then was the same type as now charged — breaking into a residence or store and stealing alcoholic beverages. There were "some problems at home with [him], specifically in the area of drinking, the use of alcoholic beverages, coming in late at night, and then lying to his parent about his activities." The last factor "is that there is a somewhat disturbing development and medical history, which may indicate some problems for [him]." No more specificity with respect to any of the reasons was offered or requested. The judge said: "Enter a finding of delinquency, Mr. Clerk." [8]

## The Disposition Hearing

A disposition hearing followed immediately. Courts Art. § 3-829 (b).[9] The judge made further inquiry of King, received information from him and made disposition:

"The disposition in this case shall be that [appellant], first of all, shall make restitution in

---

8. Those proceedings are reflected in the docket entries as follows:

"Hearing. . . .
Waived right to an attorney.
Finding: Delinquent in Fact.
Witnesses sworn. Testimony heard and taken.
Finding: Delinquent."

9. As we have indicated, to be found delinquent a child must be shown to (1) have committed a delinquent act, and (2) require supervision, treatment or rehabilitation. Courts Art. § 3-801 (k). "Disposition hearing" is defined to mean "a hearing to determine (1) Whether the child is in need of supervision, treatment, or rehabilitation; and, if so, (2) The nature of the supervision, treatment or rehabilitation." Courts Art. § 3-801 (n). Thus, there appears to be an overlapping. To be delinquent, a child must be in need of supervision, treatment, or rehabilitation. This, therefore, has already been determined at the adjudicatory hearing before the disposition hearing is held.

the amount of $38.50 in Juvenile 3370, and that he shall make restitution in the amount of $247.31 in Juvenile 3371, that amount in the last case be reduced by whatever [three others involved in the offenses] might happen to wind up paying. And that his parents, . . . , being present in this Court today, are likewise charged with making these payments and I would urge contempt citations if these payments are not made in accordance with Juvenile Services — with his parents and Juvenile Services.

And, further, that he be committed to the Maryland Training School for Boys for an indefinite period and, as part of that program, that he be processed in the Maryland Children's Center for whatever evaluation and help he can gain by such processing.

And he is committed to the custody of the Sheriff or Juvenile Services, or however you want to handle it for transportation to the Maryland Training School for Boys." [10]

King asked if appellant was to go to the Maryland Training School for Boys. The judge replied: "Whatever's the most convenient except I don't want him in the community. I want him institutionalized. He's committed to the Maryland Training School for Boys, yes."

## DECISION

### Assistance of Counsel

By legislative enactment, a party in a juvenile case "is entitled to representation by legal counsel at every stage of any proceeding under this subtitle [8, *Juvenile Causes*]." Courts Art. § 3-830 (d), "Right to Counsel." Rule 918, § a provides: "The parties may be represented by counsel

---

10. The propriety of the judgment as to the parents is not before us. See, however, *Matter of Sorrell*, 20 Md. App. 179.

retained by them in all proceedings." Section b reads: "Unless knowingly and intelligently waived, an indigent child shall be entitled to have counsel appointed by the court to represent him in a waiver, adjudicatory or disposition hearing or a hearing under Rule 915 ["Modification, Vacation or Renewal of Orders"] if his parents are also indigent or unwilling to employ counsel. In all cases not involving delinquency, the right to have counsel appointed shall apply only to those proceedings which are contested." By ch. 209, Acts 1971, which created the position of Public Defender in Maryland, the legislature declared that it was the policy of the State and the legislative intent "to provide for the realization of the constitutional guarantees of counsel in the representation of indigents, including related necessary services and facilities, in criminal and *juvenile* proceedings within the State, and to assure effective assistance and continuity of counsel to indigent accused taken into custody and indigent defendants in criminal and *juvenile* proceedings before the courts of the State of Maryland, and to authorize the Office of Public Defender to administer and assure enforcement of the provisions of this article in accordance with its terms." (emphasis added). Code, Art. 27A, § 1. The Act imposed the duty on the Public Defender to provide legal representation for indigent defendants, in certain proceedings, Code, Art. 27A, § 4, including, "In any criminal or juvenile proceeding constitutionally requiring the presence of counsel prior to presentment before a commissioner or judge," subsection (b) (1); "Criminal or juvenile proceedings, where the defendant is charged with a serious crime,[11] before the District Court of Maryland, the Supreme Bench of Baltimore City, the various circuit courts within the State of Maryland, the Court of Special Appeals of Maryland, and the Court of Appeals of Maryland," subsection (b) (2); and "Any other proceeding where possible incarceration pursuant to a judicial commitment of individuals in institutions of a public or private nature may result," subsection (b) (5).

---

11. Code, Art. 27A, § 2 (h) defines a "serious crime." See *Laquay v. State,* 16 Md. App. 709.

It is clear that appellant was entitled to representation by legal counsel with regard to the petitions filed against him. This includes legal assistance not only at the adjudicatory hearing but also with regard to the signing of the Answers. The effect of the Answers, if valid, would be to determine the matter of appellant's delinquency with little more ado. By them, he not only waived representation of counsel, but relinquished his entitlement to a hearing, surrendered his right to have the allegations proved beyond a reasonable doubt, dispensed with the need to be confronted by the witnesses against him, gave up the guarantee against self-incrimination, confessed that he committed the offenses charged, consented to be found delinquent and agreed to have the court make "an appropriate disposition," all without the benefit of counsel. See *Freeman v. Wilcox*, 119 Ga. App. 325, 167 S.E.2d 163 (1969).

If appellant was indigent, and if his parents were either indigent or unwilling to employ counsel for him, it was the duty of the Public Defender to represent him. It cannot be ascertained from the record whether he was entitled to the services of the Public Defender because we find no inquiry concerning the matter. Apparently reliance was had on the bald statement of waiver in the Answers.[12] Therefore, whether appellant and his parents were indigent or not, or whether his parents, financially able to employ counsel, were unwilling to do so or not, is not material at this point. The initial question is whether there was an effective waiver of the right to the assistance of counsel.

The Court of Appeals has carefully delineated the procedure to be followed with respect to waiver of counsel in a criminal proceeding. Its Rule 719, § c, entitled "Waiver Inquiry", prescribes:

"If, at any stage of the proceeding, an accused

---

12. At the adjudicatory hearing the extent of inquiry of appellant by the court concerning an attorney was, as we have indicated, the question: "And you are willing to proceed here this morning without a lawyer. You have a Constitutional right to have a lawyer if you want one. Is that understood?" The record shows only that appellant "Nods in assent."

We note that on appeal, appellant was represented by an attorney assigned by the Public Defender.

indicates a desire or inclination to waive representation, the court shall not permit such a waiver unless it determines, after appropriate questioning in open court, that the accused fully comprehends: (i) the nature of the charges and any lesser-included offenses, the range of allowable punishments, and that counsel may be of assistance to him in determining whether there may be defenses to the charges or circumstances in mitigation thereof; (ii) that the right to counsel includes the right to the prompt assignment of an attorney, without charge to the accused if he is financially unable to obtain private counsel; (iii) that even if the accused intends to plead guilty, counsel may be of substantial value in developing and presenting material which could affect the sentence; and (iv) that among the accused's rights at trial are the right to call witnesses in his behalf, the right to confront and cross-examine witnesses, the right to obtain witnesses by compulsory process, and the right to require proof of the charges beyond a reasonable doubt."

Section f requires the docket entries or transcript affirmatively to show compliance with the Rule. The Rule implements the constitutional mandates enunciated in *Gideon v. Wainwright,* 372 U. S. 335; *Johnson v. Zerbst,* 304 U. S. 458, and *Carnley v. Cochran,* 369 U. S. 506. It has been consistently held that the requirements of the Rule are mandatory, and that compliance with them is required irrespective of the type of plea entered, or the lack of an affirmative showing of prejudice to the accused. *Manning v. State,* 237 Md. 349; *Taylor v. State,* 20 Md. App. 404; *State v. Diggs,* 24 Md. App. 681. Although Rule 719 is applicable only to criminal cases, Rule 1 a 2, and a juvenile adjudicatory hearing is not technically a criminal case, although endowed with many of the incidents of a criminal trial, see *supra,* we believe no less is required for a knowing and intelligent waiver of counsel in a delinquency proceeding involving children than is required in a criminal proceeding,

ordinarily involving adults. To have a less strict standard for an effective waiver of counsel by a child than by an adult would be completely incongruous. The Supreme Court of the United States observed in *North Carolina v. Alford,* 400 U. S. 25, 37, that ". . . the Constitution is concerned with the practical consequences, not the formal categorizations, of state law."

With the provisions of Rule 719 as the criterion, we find, on the record before us, that the court should not have permitted the waiver of representation. We hold that, due to the lack of counsel, the waivers and admissions in the Answers were invalid and ineffective and the adjudicatory hearing was void. The judgment is reversed.

### The Conduct of the Hearing

Aside from the fatal defect of lack of assistance of counsel, we have other serious questions about the conduct of the adjudicatory hearing. Patently the adjudicatory hearing did not measure up to what we said in *Matter of Brown, supra,* was contemplated by the law of this State, and, certainly it did not afford appellant the due processes of the law. We discuss our concerns for the guidance of the lower court.

### The Sufficiency of the Evidence

To prove that appellant was a delinquent child, the State's Attorney had to adduce evidence which proved beyond a reasonable doubt (1) that an act had been committed which would be a crime if committed by a person who is not a child, that is the *corpus delicti;* (2) that appellant committed it, that is his criminal agency; and (3) that appellant required supervision, treatment or rehabilitation. The judge below made two findings of delinquency. The first of "delinquency in fact" and the second of "delinquency in law." The authority for this procedure is not evident to us. As best we understand, the first finding was with respect to the *corpus delicti* and criminal agency of the offense constituting a delinquent act; the second was with respect to the need for supervision, treatment or rehabilitation. The first finding was arrived at in this way. The judge, noting

that appellant and his mother had signed the Answers, asked, "Do you recall signing that?" The record shows that the mother nodded in assent, whereupon the judge said, "You know in that case that [appellant] admits doing both these things? You understand that . . . . ?" The record reflects that appellant nodded in assent. "These things" referred to by the judge, were what he had just before said were the charges against appellant, the breaking into a dwelling house on 12 and 14 September 1973 and stealing personal goods valued under $100 and "doing just about the same thing, breaking into the dwelling house of the same person and the same things" on 30 April and 3 May 1974.[13] It is difficult to say exactly what crimes appellant admitted committing. The allegations in the petitions, as we have indicated, amounted to a number of offenses, some inconsistent with the others, as the commission of an offense and the attempt to commit it, *Boone v. State,* 2 Md. App. 80. But more significant, it is woefully apparent that there was no proof whatsoever of the *corpus delicti* of any crime, not by way of testimony, stipulation, agreed statement of facts, or otherwise. Nor is there evidence sufficient in law to show appellant's criminal agency in any crime. The judge relied entirely on the admission by appellant in the Answers that "the statements in the petition are true and correct." Even if this admission were effective, and by our ruling it was not, it would not be enough. Courts Art. § 3-830 (a) states without equivocation: "An uncorroborated confession made by a child out of court is not sufficient proof of delinquency." [14] There was no corroboration here. The judgment of the court that appellant had committed a delinquent act was clearly erroneous. Rule 1086.

There was further error. Rule 917 declares: "A child may remain silent as of right during an adjudicatory hearing on

13. All of what the judge said is set out verbatim earlier in the opinion.

14. In this regard there is no distinction between an "admission" and a "confession." See *Rock v. State,* 6 Md. App. 618. *Cf. Stewart v. State,* 232 Md. 318.

We do not consider the possible application of the dictates of *Miranda v. Arizona,* 384 U.S. 436, and of the prohibitions set out in Courts Art. § 3-820, "Certain information or statements inadmissible at subsequent hearings."

an allegation of delinquency and shall be so advised." Appellant was not so advised and was called upon to answer questions put to him by the court. The court's use of the Answers to find the commission of a delinquent act was based upon appellant's indication that he had made the admissions therein.

## Pleading in an Adjudicatory Delinquency Hearing

As we have indicated, both appellant and the State on appeal interpret what went on at the adjudicatory hearing as a plea of guilty by appellant which was accepted by the court. Appellant goes on to argue that the acceptance of the plea was ineffective because it did not meet constitutional requirements. The State claims that the "hearing conducted by the trial judge in accepting the juvenile's guilty plea measured up to the essentials of due process and fair treatment." Although we have determined the appeal on another point, again we believe that some comment should be made.

The Rules pertaining to juvenile causes make no provision for pleas such as may be made in criminal causes. Rules 720-724. The only reference to a response to the petition is in Rule 904, which, as we have indicated, provides: "A party may file a pleading denying or admitting all a part of the facts alleged or a motion raising preliminary objection." The Rule continues: "If no pleading is filed, the parties are deemed to have denied the allegations." The Rule makes no distinction between delinquency cases and other juvenile cases, even though, as we have pointed out, a delinquency proceeding has many of the incidents of a criminal proceeding, and ordinarily requires proof of the commission of a crime by the juvenile. But even if there is no authorization for a plea of guilty in a delinquency proceeding, if admissions by the juvenile by answer or in open court have, in fact, the effect of a guilty plea, we believe the affirmative acceptance by the court should be required under the constitutional guidelines applicable to a plea of guilty in a criminal case. In other words, such admissions may be effectively accepted and considered by

the court only under the standard applicable to waiver of constitutional rights as explicated by us in *Williams v. State,* 10 Md. App. 570.[15]

> *Judgment reversed; case remanded for a new adjudicatory hearing; a new disposition hearing to abide the result.*

---

**15.** It may be advisable for the Standing Committee on Rules of Practice and Procedure to review Rule 918 in the light of Courts Art. § 3-830 (d) and Rule 719, § c, and also to consider expansion of Rule 904 to cover specifically the area of pleas in delinquency proceedings.